IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ABC IP, LLC, et al.,
Plaintiffs,

v.

Jesse T. Kline,
Defendant.
Civil Action No. 3:25-cv-00454-CWR-ASH



SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D
NOV 18 2025
ARTHUR JOHNSTON
BY_____ DEPUTY

**Defendant's Reply Memorandum in Support of Motion to Dismiss Under Rule 12(b)(2), (4), and (5)**

**Introduction**

Defendant Jesse T. Kline, appearing specially, moves to dismiss under Rules 12(b)(2), (4), and (5), submitting a reply memorandum of law in support of the motion. The Court lacks personal jurisdiction because the defendant is Domiciled in Utah, and the plaintiffs have shown no continuous or purposeful contacts with Mississippi. Process was invalid, and service was never rendered under strict compliance with F.R.C.P. 4(e) or M.R.C.P. 4(c)(5). Plaintiffs' new "evasion" claim is a post hoc fabrication contradicting their own return of service and lacking evidentiary support. Allegations of evasion cannot cure defective service or create jurisdiction where none exists. The complaint should be dismissed in full.

**Facts**

Plaintiffs filed this action on June 23, 2025, alleging one count of indirect infringement of U.S. Patent No. 12,038,247, which began its enforceable term on July 16, 2024. They claim Defendant "has and is currently making, using, selling, and/or offering for sale" a 3-Position "Super Safety," and that personal jurisdiction lies in this District because he "resides in and/or has a place of business" here. Defendant denies those allegations and has been continuously

1

domiciled in Utah since 2022, where he maintains his permanent residency and intends to remain indefinitely.

Plaintiffs claim Defendants' motions to dismiss were untimely and therefore waived; however, October 13, 2025, was a federal holiday, so the October 14th filing was timely. Plaintiffs' jurisdictional showing fails not only in substance but in structure. They omit any analysis under Mississippi's long-arm statute because none of its prongs, contract, tort, or doing business, can reach the Defendant. The only act they identify, the May 2, 2024 Facebook post, occurred outside Mississippi and before July 16, 2024, when the '247 patent issued, meaning it cannot give rise to the alleged injury of infringement as a matter of law. With no in-state act to invoke the statute, Plaintiffs quietly sidestep it altogether.  That omission also waives specific jurisdiction, which requires a causal nexus between the Defendant's forum conduct and the claim. Plaintiffs avoid this prong because acknowledging it would concede that all relevant conduct occurred elsewhere and pre-dated any enforceable patent rights. Lacking both a statutory hook and a forum-related injury, they pivot to general jurisdiction, a move that amounts to jurisdictional bootstrapping. By pointing to a spouse's license, a property deed, or an LLC registration, Plaintiffs seek to replace domicile and intent to remain with paperwork and proximity. General jurisdiction exists only where a defendant is "at home," not where others or entities happen to maintain ties. Their strategic omissions confirm the absence of lawful jurisdiction.

After filing, Plaintiffs retained Prevail Investigations LLC and its agent Ben Roberts to attempt service. Roberts executed multiple declarations describing supposed attempts in June through September 2025, using phrasing and legal structure nearly identical to Plaintiffs' pleadings, suggesting they were drafted or edited by counsel. Those declarations are contradicted

2

by objective evidence. Security footage shows Roberts entered or approached the Pearl, Mississippi property at 643 April Sound only three times: June 29, July 6 (at approximately 23:20 hours), and September 21, 2025.  On June 29, Roberts briefly approached the doorway, failed to identify himself or his purpose, and left after being trespassed. *Def. 's Mem. of L. in Supp. of Mot. to Dismiss, Ex. 6, ABC IP, LLC v. Kline*, No. 3:25-cv-00454-CWR-ASH (S.D. Miss. filed Oct. 14, 2025), ECF No. 10.  On this day, Mr. Roberts spoke via the property's intercom system and was expressly informed that the Defendant did not live at the Pearl address he was out of state. Despite being told this, Mr. Roberts continued to argue and was expressly trespassed. On July 6, Roberts trespassed into the private driveway at night and was recorded placing a GPS tracking device on a vehicle registered to Defendant's wife. *Id. Ex.* 7.  The Pearl Police Department recovered the device and opened an investigation.  *Id. Ex.* 8. On September 21, Roberts again entered the property, then unoccupied, left unidentified papers at the front door, and departed without announcing his purpose. *Id. Ex.* 10. Roberts' claims of additional "attempts" and "surveillance" on June 30, July 3, July 20, and August 10 are unsupported by any video or time-stamped documentation and contradict existing footage. See *Kline Decl. ¶¶ 4-5 Ex. 1*. The later references to "multiple intercom conversations," "notes," and alleged "evasiveness" are post-hoc fabrications added after Defendant filed his motion to dismiss. Plaintiffs never sought authorization for alternative service under Federal Rule 4(e)(1) or Mississippi Rule 4(c)(4). Defendants never refused service and was not in Mississippi or on the property during the alleged attempts. His domicile has been in Utah since 2022, when the complaint was filed. See *Ex.* 1-5.

Defendant's limited presence in Mississippi is solely for medical and educational purposes. He entered a binding contract in which he enrolled in his home state of Utah into a

3

Department of Veterans Affairs rehabilitation program, which includes medical treatment and enrollment in an education program in Mississippi, and is present in the state only during the times required by his agreement with the United States Government. The defendant's presence in Mississippi is temporary; his domicile remains in Utah, where he has lived since 2022, is registered to vote, maintains a Utah driver's license, vehicle registration, pays Utah taxes, and intends to return upon completion of his contract. Temporary presence in another state for a temporary contract consisting of medical treatment and education does not establish domicile. See *Ex.* 1 ¶¶ 1-3

On June 24, 2025, the Defendant executed a warranty deed to reflect the recorded property ownership; this conveyance was lawful, to ascertainable persons, and not to an alias. Plaintiffs' assertions are false and not supported by evidence outside of an assumption.  The Mississippi address on the deed serves only to establish the property's situs for recording and does not evidence domicile, as the defendant has always intended to remain in Utah.  Plaintiffs' reliance on a March 2025 Rankin County marriage certificate is misplaced. The couple's presence in Mississippi for that event does not establish domicile; both have lived in Utah since 2022.  Plaintiffs also cite an August 6, 2025, annual report for Behind Enemy Lines LLC, an Illinois company managed by Defendant. The company was dissolved on 07/12/2024 and reinstated in August 2025; its use of the Pearl address was a clerical error corrected with the Illinois Secretary of State.  The annual report the plaintiffs submitted as an exhibit included a reinstatement form that they omitted. See *Kline Decl. Ex. 1* ¶ *6,* and *Ex.* 6 IL LLC Reinstatement. The LLC did not exist at the time of the complaint, has no offices, employees, or assets in Mississippi, and its contacts cannot establish domicile for its manager. See *Ex.* 7 IL Sec. State Public Portal Image.  Plaintiffs further note a Mississippi nursing license issued to Kristen Kline

under her maiden name in January 2025 and the May 2025 formation of KP Holding LLC. Her professional or business filings do not establish domicile for her spouse or confer jurisdiction over him.  Plaintiffs have failed to establish any lawful basis for this Court's jurisdiction. Their pleadings omit the Mississippi long-arm statute, abandon specific jurisdiction by relying on pre-issuance, out-of-state conduct that cannot give rise to infringement, and attempt to bootstrap general jurisdiction through property records and third-party associations.  Defendant's Utah domicile is supported by his valid Utah driver's license, voter registration, vehicle registration, vehicle title, resident CCW, and intends to remain indefinitely in Utah when the complaint was filed. Plaintiffs' private investigator speculated, without contacting Utah agencies, that these credentials were "surrendered," 'invalid,' or "false." Her inability to verify them merely reflects inadequate inquiry. The record shows Defendant has maintained continuous domicile in Utah since 2022, and lacks continuous or systematic contacts sufficient to render him "at home" in Mississippi. The process server's lawyer-styled declarations, containing new factual claims and contradictions of his prior affidavit, are post hoc fabrications meant to justify defective service after the fact. Objective surveillance refutes those statements and confirms that service was never properly affected under Rule 4. Plaintiffs have not met their prima facie burden to show personal jurisdiction. Because process and service were legally insufficient, this action must be dismissed pursuant to 12(b)(2), 12(b)(4), and 12(b)(5).

### I.  Defendant's Motion was Timely, Rule 6(a) Controls as Their Waiver Theory is Moot

Plaintiffs wrongly suggest Defendant waived his 12(b)(2), 12(b)(4), and 12(b)(5). That argument fails under Rule 6(a)(1)(C). Plaintiffs' return of service is dated September 21, 2025, making the 21 days on October 13, 2025, a federal holiday (Columbus Day) when the Clerk's Office was closed.  Rule 6(a)(1)(C) provides: "If the clerk's office is inaccessible on the last

5

day for filing under these rules, then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday." Defendant filed on October 14, the first accessible business day thereafter. The filing was therefore timely.  Plaintiffs could have saved the court from this frivolous argument, as their waiver theory is meritless.   Also, the service and process were invalid, and the 21-day clock never began. Therefore, Plaintiffs' waiver argument is moot.

## II.    Plaintiffs Waive the Long-Arm Statute and Fail to Show Specific Jurisdiction for Pre-Issuance, Out-of-State Conduct.

The Court may treat the movant's factual assertions as undisputed and rule on the motion accordingly.  See *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).  By omitting any analysis under Mississippi's long-arm statute, Plaintiffs effectively admit that none of its three prongs, contract, tort, or doing business, applies to Defendant. Likewise, their silence on specific jurisdiction avoids the required showing of a causal nexus between the forum and the alleged injury. Plaintiffs avoid this prong because acknowledging it would concede that all relevant conduct occurred elsewhere and pre-dated any enforceable patent rights. "Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: (1) whether a forum state's long arm statute permits service of process and (2) whether the assertion of personal jurisdiction violates due process." *Athletic Training Innovation, LLC. v. eTagz, Inc.* 955F.Supp.2d 602 (E.D. La. 2013).  The exercise of specific personal jurisdiction over a nonresident defendant is a manner consistent with due process that requires a "sufficient nexus" between the nonresident defendant's contacts with the forum and at least one of the causes of action.  *Lloyd's Syndicate 457 v. American Global Maritime* 346 F.Supp.3d 908-10. "Personal jurisdiction comports with due process when first, the defendant has the requisite minimum contact with the forum state and second, requiring the defendant to submit to jurisdiction in the forum state would not infringe on traditional notions of fair play and substantial justice." *Id.* "There can be no

6

infringement of a patent that has not yet issued." *GAF Building Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 482 (Fed. Cir. 1996). Under 35 U.S.C. § 271(a), the injury of infringement can only occur "… during the term of the patent…" Lacking both a statutory hook and a forum-related injury, they pivoted to general jurisdiction, a move that amounts to jurisdictional bootstrapping. Because Plaintiffs have failed to meet their prima facie burden to establish personal jurisdiction under either Mississippi's long-arm statute or the Due Process Clause, the Court should dismiss this action under Rule 12(b)(2) for lack of personal jurisdiction.

**III.    Plaintiffs fail to establish General Jurisdiction as the Defendants' Self-Authenticating Documentation establishes that his Domicile is in Utah since 2022.**

The Plaintiffs want to treat the Defendant like a resident for purposes of jurisdiction, while simultaneously relying on evidence that describes only pre-issuance (May 2, 2024 Facebook post), out-of-state conduct that could never rise to the injury of infringement as a matter of law ('247 Patent enforcement term began on July 16, 2024). Plaintiffs cannot bootstrap jurisdiction from a spouse's license, property, or LLC filings; domicile, for jurisdictional purposes, requires physical presence and the intent to remain, not the borrowed connections of others. Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there. *Hargrave v. Fibreboard,* 710 F.2d at 1159 (5th Cir. 1983). So long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in the forum state may not be attributed to the other. *Id.* at 1160, citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925). The separateness of a corporate identity will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime. *Id* at 1162, quoting *Sam v. Redevelopment Auth.* 431 Pa. 240 (1968). The Party seeking to invoke the court's jurisdiction has the burden of establishing jurisdiction by making a prima facie showing of the facts upon

7

which it may be based. *Id.* at 1159. For diversity purposes, 'Citizenship' means domicile; mere residence in a state is not sufficient. *Mas v. Perry*, 489 F.2d 1399. A change in domicile may be effected only by… (a) taking up residence in a different domicile with (b) the intention to remain there. *Id.* citing *Mitchell v. United States*, 88 U.S. 350 (1875). "A woman does not have her domicile or state citizenship change by reason of her marriage to an alien." *Id.* at 1400. "The relevant time for determining domicile is the time at which the complaint was filed." *Cheshire v. Okundaye*, 2007 WL 9773945, at 2, citing *Gilbert v. David*, 235 U.S. 561 (1914). "The state in which a person lives is considered his/her domicile until the evidence establishes the contrary." *Id.* "In cases removed from state court, diversity of citizenship must exist both at the time of filing in state court and at the time of removal." *Id.* at 3, citing *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 776 (7th Cir. 1986). Current residence, voting registration, home ownership, location of spouse and property, tax filings, driver's license, memberships, and intent to remain. *Id.* citing *District of Columbia v. Murphy*, 314 U.S. 441 (1941).

This case is not about where a name or address appears on a deed, it is about where a person actually resides, acts, and purposefully avails himself of a forum's laws; the Fifth Circuit has rejected this kind of jurisdictional bootstrapping. *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir. 1983). In *Hargrave,* the Fifth Circuit refused to extend Texas jurisdiction of a foreign defendant merely because of its relationship with a subsidiary that once operated in the forum. *Id.* at 1160. The English parent corporation, Turner & Newall Ltd. ("T'&N"), owned 100% of a Pennsylvania subsidiary (K&M) that had previously sold asbestos products reaching Texas. *Id.* But T&N maintained its own headquarters in England, separate officers, bank accounts, records, and tax filings. *Id.* The court held that "so long as a parent and subsidiary maintained separate, distinct corporate entities, the presence of one in a forum state may not be

8

attributed to the other. *Id.* Its policy level oversight was no more than that appropriate for a sole shareholder," and therefore insufficient to confer jurisdiction. *Id.* at 116.

General jurisdiction exists only where a person is truly "at home," which requires both physical presence and an intent to remain indefinitely, not mere residence, property ownership, or temporary connection to the forum. *Mas v. Perry,* 489 F.2d 1396 (5th Cir. 1974). Jean Paul Mas (citizen of France) and Judy Mas (U.S. citizen from Mississippi) lived in Louisiana as graduate assistants at LSU for about two years after marriage. *Id.* at 1398. They were in Louisiana only as students, with no intent to remain permanently. *Id.* at 1400. Judy Mas had been domiciled in Mississippi before marriage and never established a new domicile. *Id.* at 1400-01. The court found that until she acquires a new domicile, she remains a domiciliary, and thus a citizen, of Mississippi. *Id.* The court clarified that citizenship means domicile; mere residence in the state is not sufficient. *Id.* at 1399. The court established that diversity jurisdiction was therefore proper because Mrs. Mas remained a Mississippi citizen, her husband was a French Citizen, and the defendant landlord was a Louisiana citizen. *Id.*

Domicile, not mere residence, governs jurisdiction, and it is determined at the time of filing by objective evidence of a person's true, fixed, and permanent home coupled with intent to remain there. *Cheshire,* 2007 WL 9773945. The Southern District of Mississippi reaffirmed that domicile, not mere residence, determines citizenship for jurisdictional purposes. The court explained that "the relevant time for determining domicile is the time at which the complaint was filed," and that "the state in which a person lives is considered his or her domicile until the evidence establishes the contrary." *Id.* citing *District of Columbia v. Murphy,* 314 U.S. 441, 445 (1941). The court also held that domicile is a mixed question of law and fact proven by objective indicators, such as driver's license, tax filings, voting registration, and intent to remain. *Id.*

9

The same reasoning applies here.  Plaintiffs seek to bootstrap jurisdiction over the Defendant by pointing to property records or associations with other entities or individuals in Mississippi.  For instance, a conveyance showing the Defendant's name or an address listed on a deed does not establish his domicile. Plaintiffs claim, without evidence, that a name listed on a conveyance is an alias; such claims are clearly false.  But, as in *Hargrave*, these limited connections do not establish that the Defendant is "at home" in the forum.  The deed merely reflects ownership, not domicile, control, or purposeful availment.  Like T&N and its Pennsylvania subsidiary, the defendant and any related property or entity are separate and distinct legal persons, with their own accounts, records, and functions.  There is no evidence that the Defendant used any Mississippi property, LLC, or trust "as a mere instrumentality" or "to defeat public convenience, justify wrong, or protect fraud."  Even *Behind Enemy Lines, LLC* cannot supply the nexus Plaintiffs seek. It is a distinct legal entity, incapable of conferring personal jurisdiction or domicile upon its members. The Mississippi address cited by Plaintiffs was a clerical error promptly corrected by the Secretary of State, and their own exhibit omits the contemporaneous reinstatement form showing that the LLC had been administratively dissolved in 2024. *Ex. 6-7*. The record, therefore, demonstrates that, at the time of the complaint, the entity did not legally exist. Plaintiffs' omission of the reinstatement filing is not accidental; it conceals that the address in question was a ministerial correction, not a jurisdictional anchor. By conflating mere association with presence, Plaintiffs attempt to transform a non-operational filing into evidence of physical or commercial activity. But jurisdiction cannot rest on paperwork.  A dissolved, later-reinstated LLC, particularly one without operations in Mississippi, cannot render a nonresident "at home" in the forum who is not a party to this suit.  The Fifth Circuit squarely rejected that logic: "The Lone Star of Texas may shine brightly throughout the

10

world, but its long arm is not judicially all encompassing." Likewise, Mississippi's long-arm statute cannot reach a defendant who neither lives nor conducts business here, merely because his name appears on a property or an entity has ties to the state. Just as *Hargrave* held that 100% ownership and policy influence did not make an English corporation "at home" in Texas, shared ownership of property or passive ties to Mississippi do not make this Defendant personally subject to general jurisdiction. The Due Process Clause requires "continuous and systematic' contact showing deliberate engagement with the forum, not incidental or post-litigation paper connections. The plaintiffs here have not met their burden of establishing jurisdiction by making a prima facie showing of the facts. Plaintiffs rely on superficial connections such as a deed, a spouse's professional license, or the registration of limited liability companies. Still, none of these demonstrate the defendant's domicile or continuous, systematic personal contact with the forum. Property ownership does not equate to permanent residency; a spouse's state license is not a legal presence; a separate business entity cannot be imputed to confer jurisdiction on an individual. Like the parent company in *Hargrave,* the defendants maintain separate personal, business, and legal identities, and the plaintiff's allegations fall far short of the prima facie factual showing required to establish personal jurisdiction. Mississippi's laws or conducted continuous and systematic activities within the state, the jurisdictional burden remains unsatisfied, and dismissal under Rule 12(b)(2) is required.

Just like Mrs. Mas in *Mas*, the defendant's domicile for jurisdictional purposes depends on your true, fixed, and permanent home, not on where you might temporarily reside for a government contract. The Fifth Circuit made clear that "mere residence in the state is not sufficient" to establish citizenship or general jurisdiction. In this case, the plaintiffs' attempt to claim general jurisdiction based on a deed or a marriage certificate is legally insufficient under

11

*Mas.* Even if your name appears on a deed or as the owner of property in Mississippi, that does not show that the defendant intended to remain there indefinitely, which is the constitutional requirement for domicile. Like Mr. Mas, the defendant is a patient, student and may have temporary ties to Mississippi, but those do not override his true domicile unless he takes up residence in a different state with the intention to remain there. Here, the defendant is under a binding government contract under which he was relocated and enrolled in a rehabilitation program including medical treatment and school. In short, the defendant's mere presence in the forum does not establish jurisdiction, domicile, or residence. Until you form an intent to permanently remain in the state, the defendant's legal domicile remains elsewhere. At the time of the complaint, the defendant's domicile was in Utah and remains there to this day. Jurisdiction cannot rely solely on paperwork, property, or proximity; it requires both physical presence and intent to remain. Because Plaintiffs have failed to make a prima facie showing that Defendant is domiciled in or "at home" within this forum, the Court lacks general personal jurisdiction, and this action must be dismissed under Rule 12(b)(2).

Plaintiffs' reliance on *Cheshire* is misplaced. That case reinforces, rather than weakens, the principle that domicile must be proven by objective facts showing intent to remain, not presumed from residence or property ownership. Plaintiffs offer none. Their paragraph conflates residence with domicile and fails to meet the *Hargrave, Mas,* and *Cheshire* burden of making a prima facie factual showing of jurisdiction. Far from supporting Plaintiffs' position, *Cheshire* squarely undercuts it. The court remanded the case for lack of diversity precisely because the defendants failed to carry their burden of proving domicile, holding that "the defendants have offered nothing to counter the information supplied" by the party asserting a different domicile. *Id.* at 3. The *Cheshire* court made clear that domicile is not established through labels, pleadings,

12

or assumptions; it must be shown through competent, objective evidence.  Here, Plaintiffs do precisely what *Cheshire* prohibits; they assert domicile by allegation rather than proof. Their claim that "Kline lives in and is domiciled in Pearl, Mississippi" rests entirely on a deed, incidental records, and attorney-purchased self-serving affidavits, none of which show physical presence with intent to remain. The same flaw doomed the removal defendants in *Cheshire*, who, like Plaintiffs here, offered no admissible evidence of domicile beyond speculation.  Moreover, *Cheshire* reaffirmed that a person's domicile is established by where they actually live and intend to remain indefinitely, not by prior addresses, property ownership, family associations, or speculation from attorney-paid third parties. Plaintiffs present no voter registration, driver's license, tax filings, or other objective indicia showing Defendant intended to remain in Mississippi at the time of filing.   In the absence of such evidence, their jurisdictional theory collapses.  Plaintiffs submit a paid for affidavit from a private investigator that reads as if counsel drafted it, rife with hearsay and a self-serving narrative, claiming to have "searched the Utah Motor Vehicle TLR system" and "found no current Utah registration," but attaches no printout, no query results, and no certification from the Utah Tax Commission, the court can infer it did not support her claim as she is no custodian of these records. That statement is inadmissible hearsay and speculation under Fed. R. Evid. 602, 802, and 901.  However, when the defendant searched his vehicle registration in the Utah tax database, he located an active Utah title from 02/23 and an active vehicle registration from 01/25 on 11/05/2025, which impeach the plaintiff's agent's self-serving claims. *Ex.* 1-5. Additionally, plaintiffs' agents claim that a Utah Concealed Firearms Permit (CFP) does not confer residency status because the state issues permits to non-residents.  Utah distinguishes a resident CFP under Utah Code Ann. § 53-5a-602, stating "To establish personal identification and residence in this state for the purposes of this part…" A

13

resident CFP exempts a Utah Bureau of Criminal Investigation (BCI) background check fee, available only to Utah residents. The Defendants' Utah CFP lists the state of residence as "UT," which is why it was left unredacted. *Def.'s Mem. Ex.* [3], No. 3:25-cv-00454-CWR-ASH, ECF No. 10. The investigator's claims are incorrect under Utah law, something Plaintiffs' counsel could have verified through basic legal research. The Defendant also called Utah BCI on November 10, 2025, the custodian of these records, who confirmed that the CFP possessed by the Defendant was in fact a Utah resident permit. Under *Chesire*, domicile and general jurisdiction cannot be presumed or bootstrapped from incidental ties or property records. Plaintiffs bear the burden of proving domicile through credible, objective evidence; their pleadings are speculative, unreliable, and fall far short. The Defendant has been domiciled in Utah since 2022, and at the time the complaint was filed. The plaintiffs here have failed to meet their burden, and the Court must dismiss the Complaint under Rule 12(b)(2) for lack of personal jurisdiction.

## IV.    Plaintiffs' Service Narrative Is a Post Hoc Fabrication and Strict Compliance Under Rule 4 is Required.

Plaintiffs' purported "service" was no service at all; it consisted merely of leaving papers unattended at an unoccupied property, without delivering them to the Defendant or to any person authorized by law to receive them, as plaintiffs never requested alternative service. Service under Rule 4(e)(1) by: "(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or... (A) delivering a copy of the summons and of the complaint to the individual personally..." Fed. R. Civ. P. 4(e)(1). Under Miss R. Civ. P. Rule 4(d) provides a similar manner: "Summons and Complaint: Person to Be Served... (A) by delivering a copy of the summons and of the complaint to him personally." Rule 12(b)(5) provides for dismissal of a

14

claim if service of process was not timely made in accordance with Rule 4 or was not properly served in the appropriate manner." *Thomas v. New Leaders for New Schs.*, 278 F.R.D. 347, 350 (E.D. La. 2011) (quoting *Wallace v. St. Charles Par. Sch. Bd.*, No. 04-1376, 2005 WL 1155770, at *1 (E.D. La. May 5, 2005)) (citing *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981)). "When service of process is challenged, the party on whose behalf it is made must bear the burden of establishing its validity." *Id.* "A plaintiff's ignorance of Rule 4 does not constitute good cause..." *Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988) (quoting *Townsel v. County of Contra Costa*, 820 F.2d 319, 320 (9th Cir. 1987)). "If a process server has executed a return properly, there is a presumption that service of process has occurred. ... However, this presumption is rebuttable through the use of extrinsic evidence, including the testimony of the party who is contesting service." *Collins v. Westbrook*, at 929 ¶18 (citing McCain v. Dauzat, 791 So.2d 839, 842 (Miss. 2001)). Actual knowledge of a lawsuit by a defendant is insufficient to confer jurisdiction. *Maschinenfabrik Reinhausen GmbH v. Shanghai Huaming Power Equip. Co.*, No. 3:06-CV-0897-L, 2007 WL 9711692 (N.D. Tex. Mar. 31, 2007). The Court may treat the movant's factual assertions as undisputed and rule on the motion accordingly. See *Eversley v. MBank Dallas*, 843 F.2d 172, 174. Service is void unless the summons and complaint are personally delivered to the defendant or an authorized agent; leaving papers with an unrelated person or at the wrong address is not valid service, and the plaintiff bears the burden to prove otherwise. *Thomas,* 278 F.R.D. 347, 350.

Evasion cannot be conjured after the fact to rescue invalid service; a plaintiff may show good cause if the defendant has evaded service of process or engaged in misleading conduct, but such a showing must be timely, fact-supported, and accompanied by diligent efforts to perfect

service. *Collins v. Westbrook*, 184 So. 3d 922, 930–31 ¶ 20 (Miss. 2016). In *Collins* Murphree, a process server met a man he was attempting to serve at Incredible Pizza, who confirmed he was "Dr. Toikus Westbrook." *Id.* at 926 ¶¶ 7-9. Murphree handed over the summons and complaint, then executed an Affidavit of Service swearing that he had served Dr. Westbrook on April 13, 2012. *Id.* It was later revealed that the man served was actually Dr. Jesse Westbrook, the defendant's father. *Id.* The Mississippi Supreme Court held that the defendant was not properly served and that the plaintiff established good cause excusable neglect for failure to timely serve process because the process server was misled by the defendant's father and acted diligently and in good faith once the issue arose. *Id* at 930-32

The governing standard is strict compliance, not speculation or narrative. Plaintiffs' shifting explanations and lawyer-drafted declarations reveal a fundamental failure to serve Defendant in accordance with Rule 4. Their reliance on an invented "evasion" theory cannot substitute for the procedural steps required by law. Plaintiffs cannot blame "evasion" when their own process server (1) was told no one was present, (2) never asked the Court for alternative service. This case is the opposite of *Collins*, where service was thwarted because a third party affirmatively misled the process server, and the plaintiff still moved the court for relief. *Collins* explains that "good cause" is most likely where "the defendant has evaded service of process or engaged in misleading conduct" and the plaintiff has acted diligently to complete service. Here, plaintiffs cannot make that showing. First, the service history shows noncompliance from the start. On June 29, 2025, the process server came onto the Pearl property, behaved suspiciously, refused to identify his purpose, argued, and was expressly trespassed via intercom. Despite that, the process server later claimed multiple July/August attempts, which are inconsistent with documented proof; the security videos show he only entered the property on June 29, July 6, and

16

September 21. The plaintiffs' agent's first acts were unlawful from the start. On July 6, 2025, at 23:20, the process server returned, again trespassing at night and, instead of serving anyone, targeting the wife's vehicle, and planting a GPS device with no lawful purpose. That conduct shows suspected criminal behavior, not lawful service, as any implied license to enter the property had been expressly revoked.  The last time their agent came to the property was on September 21, 2025, when he left unidentified papers after being told that "Mr. Kline" was not located on the property, as he is domiciled in Utah. The defendant was not physically present on the property. Rather than seek guidance from the court, the server chose to leave "papers" outside an unoccupied house, with no person of suitable age and discretion to accept them.  That is classic "drop service," which does not satisfy Rule 4's personal-delivery requirement, service must comply with Rule 4 or the court lacks jurisdiction.  The key point in *Collins* is that, when service fails because the defendant isn't there, the burden shifts to the plaintiff to go to court, either to extend time or to ask for alternative means. *Collins* says good cause is "fact-sensitive" and may exist where service is thwarted, but the plaintiff in *Collins* built a record and asked the judge for more time. Plaintiffs here did the opposite: when they could not lawfully effect service, instead of seeking guidance from the judiciary, they resorted to unlawful criminal tactics targeting the defendant's family member, who was not a party to this suit.  Their own return service showed, on its face, that no personal service was rendered. Yet they never corrected it unilaterally or sought an alternative service, and only invoked "evasion" after the defendant contested service. That is precisely the opposite of Rule 4's framework, which requires diligence from the serving party, not acquiescence in defective service.  So, the proper inference is "the plaintiffs employed an agent who was willing to violate Mississippi criminal statute and the common law"; and "plaintiffs saw that personal delivery had not been made and chose not to fix

17

it." As evidenced by the executed return service filed on 09/22/2025, plaintiff's agent expressly stated he rendered service out of compliance with Rule 4. See *Doc* 8.  And under both Mississippi Rule 4 and federal Rule 4(e), a process server's unilateral decision to drop papers outside an empty house, after being told the named person isn't there, as no one was present on the property, does not confer personal jurisdiction. Their new argument that Defendant "evaded" or "refused" service only underscores their noncompliance. The court should therefore dismiss this action under Rule 12(b)(5), because the plaintiffs should have done what *Collins* says they should have months ago: seek proper authority from the court.

Additionally, the court should recognize that any reasonable person, out of fear for their family's safety, would have been hesitant to come in contact with the criminal tactics employed by the Plaintiffs. Their agent remained unidentified for months, and his conduct was abnormal compared to lawful service attempts.  It defies reason to suggest that service of process includes criminal trespass and violations of the common law in the plaintiff's name.  Plaintiffs' memorandum never denies or even addresses the GPS incident; the court can treat it as undisputed for the purpose of ruling on this motion.  See 843 F.2d 172, 174.  The Defendant specifically alleged, and supported with surveillance evidence, that Plaintiffs' process server unlawfully entered private property on July 6th, 2025, at 23:20 under cover of darkness and placed a GPS tracking device on his wife's vehicle.  That misconduct alone avoids any presumption of regularity in the return of service and renders Plaintiffs' proof of service unreliable.  Plaintiffs' response never denies, extinguishes, or even addresses that allegation, and the court can confirm that the Plaintiffs thereby admit that they were acting in bad faith and lack any presumption of due diligence.  Plaintiffs' process server affidavit fails under FRE 602, 701, 802, and 901. It rests on speculation, hearsay, and improper opinions. Mr. Roberts never saw the

18

Defendant, yet "believes" a voice was his and that service was completed; belief is not personal knowledge. He repeats hearsay from a neighbor, labels Defendant "evasive," and cites unauthenticated records. None of this is admissible or sufficient under Rule 4. The process server claims to be on the property on June 30, July 3, July 20, and August 10, Sept. 21. However, objective evidence shows he was only on the property June 29, July 6 (at 23:20, trespassing), and September 21, when he left unidentified "papers" at an unoccupied property, but his affidavit contradicts the defendant's personal knowledge, and the evidence captured by security footage, so his credibility remains unreliable. Plaintiffs accused and speculated that the defendants' own motion indicates misdirection. The defendant has ties to Illinois and accepts mail there; he is domiciled in Utah, so, understandably, his phone number is from Utah. The fact that the defendant's email address is from a foreign origin and untraceable only proves that the defendant is concerned about his privacy. The only reason Plaintiffs know the email is untraceable is that they attempted to track it.

Plaintiffs mischaracterize Defendant's cited authorities and misconstrue their purpose. Defendant cited *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344 (5th Cir. 1992), and *Maschinenfabrik Reinhausen GmbH v. Shanghai Huaming Power Equipment Co.*, to demonstrate that service of process must strictly comply with Rule 4, not to contest minor procedural formality. Both cases hold that a summons and complaint must be delivered to the proper person in the precise manner required by the rule and that failure to do so renders service void, regardless of intent or effort. Plaintiffs' suggestion that these cases are irrelevant misses that point entirely. As actual knowledge of the lawsuit is irrelevant, and cannot be used to confer jurisdiction over the defendant. Therefore, service of process was not proper and requires dismissal, as it does not comply with Rule 4.

19

Plaintiffs' reliance on *Slaieh v. Zeineh*, 539 F. Supp. 2d 864 (S.D. Miss. 2008), is entirely misplaced. *Slaieh* held that when a defendant is physically present, personally identified, and expressly refuses to accept service from a known process server, "delivery" may be deemed complete. *Id.* at 868–69. But that exception presupposes (1) the defendant's presence and identification, and (2) a clear refusal to accept service from an identified process server. Neither element exists here. Defendant was not physically present at the Mississippi property on September 21 and thus could not have refused service. There was no in-person encounter, no physical delivery, and no acknowledgment of the process server's identity or purpose. As the process server never identified himself, his purpose, and established that he was leaving "papers" at an unoccupied property.  The affidavit's claim that "the voice on the intercom was clearly Kline" is speculation, not evidence, irrelevant, and cannot satisfy the delivery requirement of Rule 4(e). Mississippi law demands personal service: Leaving papers at a door, even after speaking to someone over an intercom, amounts to a phone call, is not "delivery" under Federal Rule 4(e) or M.R.C.P. 4(d)(1)(A), which requires actual hand delivery to the individual personally or an authorized agent. Thus, Plaintiffs' invocation of *Slaieh* is a legal sleight of hand: *Slaieh* dealt with an evading defendant who ran from the process server; here, Roberts encountered no one and left papers at an empty home. *Slaieh* provides no safe harbor for fabricated returns or speculative intercom identification.  Therefore, proper service was never rendered, and the complaint should be dismissed under 12(b)(5).

## V.     Plaintiffs' process was invalid as the server affidavit is wholly unreliable.

Rule 12(b)(4) allows a defendant to move for dismissal based on insufficient process. *See* Fed.R.Civ.P. 12(b)(4). In turn, Rule 4(b) provides that on or after filing the complaint, "the plaintiff may present a summons to the clerk for signature and seal. If the

20

summons is properly completed,[4] the clerk must sign, seal, and issue it to the plaintiff for service on the defendant." Fed.R.Civ.P. 4(b). A summons, or a copy of a summons if addressed to multiple defendants, "must be issued for *each defendant* to be served." Fed.R.Civ.P. 4(b) (emphasis added). The plaintiff bears the burden of proof regarding sufficiency of the process. *Lechner v. Citimortgage, Inc.,* 4:09–CV–302–Y, 2009 WL 2356142, at *1 (N.D.Tex. July 29, 2009); *see also* Fed.R.Civ.P. 4(c); *Coleman v. Bank of New York Mellon*, 969 F.Supp.2d (N.D. Tex. 2013). Here in this case, Plaintiffs' process server only admitted to leaving "papers", and his return service executed on 09/22/2025 is unreliable because the document is self-impeaching, contradictory, and misleading. The server also submits a post hoc fabricated affidavit that contradicts the Defendant's objective evidence regarding the time frames of his alleged service attempt. Therefore, because the process is not in compliance with Rule 4(b), the Defendant respectfully requests that this honorable court dismiss this action under 12(b) (4).

## VI.    No evidentiary hearing or oral argument is necessary to decide the motion.

An evidentiary hearing is unnecessary because the record resolves all issues under Rules 12(b)(2), (4), and (5). "The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a prima facie case for jurisdiction has been made; rather, the district court may consider the contents of the record at the time of the motion. ... Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a prima facie case for [personal] jurisdiction has been presented." *Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (quoting *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006)).

Defendant's sworn declaration and supporting exhibits, comprising a Utah driver's license, voter registration, vehicle title, registration, and resident concealed firearms permit,

21

establish as a matter of record that Defendant has been domiciled in Utah since 2022 and during the time the complaint was filed. Plaintiffs' return of service confirms that the process server failed to comply with Rule 4, rendering service defective. Their reliance on two private investigative firms does not create a dispute warranting a hearing. The Utah firm found no records, and the defendant's query to the government custodian showed the firm's lack of diligence. The affidavits from investigators, paid for by Plaintiffs, are self-serving, unsupported by official documents, and based on speculation. Plaintiffs wrongly equate a deed with domicile; owning property in another state does not prove domicile without intent to remain there. The record before the Court is complete and undisputed. Affidavits and documentary evidence establish jurisdictional facts, and there are no material conflicts, the Court may rule on the motion without convening an evidentiary hearing. Because Plaintiffs have not presented any competent or contradictory evidence to rebut Defendant's sworn declaration or documentary proof, there is no factual controversy to resolve. Plaintiffs claim a conflict of facts, but their affidavits are self-serving and misleading. The Court should decide the motion based on the existing record and deny an evidentiary hearing or oral argument. If the Court opts for a hearing, the Defendant requests that it be scheduled after December 15th to avoid prejudice. The Plaintiffs have failed to meet their prima facie burden. At the time the complaint was filed, the Defendant was domiciled in Utah and still is to this day. The Court should decide the motion on the briefs and dismiss for lack of jurisdiction, improper process, and improper service.

Respectfully submitted this 18 day of November, 2025.

Jesse T. Kline, Defendant *Pro Se*
Special Appearance Only
P.O. Box 106
Mendota, IL 61342
Email: jkline05191986@proton.me
Telephone: (385) 341-5369

22

## CERTIFICATE OF SERVICE

I hereby certify that on this _18_ day of November 2025, I electronically filed the foregoing Reply Memorandum in Support of Motion to Dismiss Under Rules 12(b)(2), (4), and (5) with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

Respectfully submitted,

Jesse T. Kline
Defendant, Pro Se
P.O. Box 106
Mendota, IL 60518
jkline05191986@proton.me
(385) 341-5369