**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| **ABC IP, LLC, and RARE BREED TRIGGERS, INC.,**<br>*Plaintiffs,*<br>v.<br>**JESSE T. KLINE,**<br>*Defendant.* | CAUSE NO. 3:25-CV-454-CWR-ASH |

**ORDER**

*Pro se* Defendant, Jesse T. Kline, challenges the exercise of personal jurisdiction over him, the sufficiency of process, and the sufficiency of service of process. Docket No. 9. The parties contest the facts surrounding his challenges. This contentious dispute resulted in Plaintiffs' request for leave to submit an amended response, Docket No. 17, and later, their request for leave to file a sur-reply. Docket No. 19. Mr. Kline then filed a motion to strike Plaintiffs' sur-reply. Docket No. 21.

After this extensive briefing, Plaintiffs requested to file an amended complaint, Docket No. 24; requested to file a second amended complaint, Docket No. 32; and requested to file a third amended complaint, Docket No. 34. It is time to reset the table and for this case to move forward. To facilitate this, the Court rules as follows.

**1. Personal Jurisdiction**

The Court begins with Defendant's jurisdictional challenge. As an initial matter, Defendant attached several new exhibits to his reply brief in support of his motion to dismiss and made new arguments in the same. Therefore, Plaintiffs' motion for leave to file a sur-

reply, Docket No. 19, is granted, and Defendant's motion to strike the sur-reply, Docket No. 21, is denied. Further, Plaintiffs' motion for leave to file an amended response, wherein they added the request for a hearing on this matter, Docket No. 17, is denied as moot.

"There are two types of personal jurisdiction under federal law: general and specific." *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 372 (5th Cir. 2024) (citing *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019)). "General personal jurisdiction applies 'only when a defendant is essentially at home,' and any and all claims may be brought against a defendant wherever it is subject to such jurisdiction.'" *Id.* (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). "By comparison, specific personal jurisdiction is narrower and attaches only when there is a sufficient connection between a defendant's forum-related contacts and a plaintiff's causes of action." *Id.* (citing *Ford Motor*, 592 U.S. at 359-60).

"The party invoking the Court's jurisdiction bears the burden of establishing that personal jurisdiction is warranted." *Norton v. Turrentine*, No. 1:25-CV-99-GHD-DAS, 2026 WL 687094, at *2 (N.D. Miss. Mar. 11, 2026) (citing *Savoie v. Pritchard*, 122 F.4th 185, 190 (5th Cir. 2024)). "When the court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, that burden requires only that the nonmovant make a *prima facie* showing." *Savoie*, 122 F.4th at 190 (quotation marks and citation omitted). "While the district court must accept as true the allegations in the complaint, it 'is not obligated to consult only those assertions in determining whether a *prima facie* case for jurisdiction has been made.'" *Id.* (quoting *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006)) (cleaned up). "Instead, the court may consider the contents of the record before the court at the time of the motion . . . . When considering the host of allegations and evidence, we accept

as true plaintiff's uncontroverted, nonconclusional factual allegations and resolve all controverted allegations in the plaintiff's favor." *Id.* (quotation marks and citations omitted). The Court must determine whether Plaintiffs have presented sufficient evidence to support their assertion that jurisdiction over Mr. Kline in this matter is proper in this Court.

The Complaint in this matter appears to assert general jurisdiction over the Defendant. Docket No. 1 at 2 ("Personal jurisdiction and venue over Defendant is proper in this District because the Defendant resides in and/or has a place of business in this district."). The Court therefore begins with general jurisdiction.

"An individual is subject to general personal jurisdiction in the state of his domicile." *Monistere v. Losauro*, No. 13-22, 2013 WL 6383886, at *3 (E.D. La. Dec. 4, 2013) (citing *United States v. Henderson*, 209 Fed. App'x 401, 402 (5th Cir. 2006)). "A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) (quotation marks and citation omitted) (cleaned up). "The law of domicile is a mixed question of law and fact." *Ochoa v. PV Holding Corp.*, No. 06-10716, 2007 WL 496612, at *2 (E.D. La. Feb. 8, 2007) (collecting cases). "In ascertaining domicile, the Court is not limited to the pleadings; rather, it may review record evidence, affidavits, and testimony concerning facts underlying the citizenship of the parties." *Id.* (citing *Coury v. Prot,* 85 F.3d 244, 249 (5th Cir. 1996)). "The relevant time for determining domicile is the time at which the complaint was filed." *Cheshire v. Okundaye*, No. 3:06-CV-165-HTW-JCS, 2007 WL 9773945, at *2 (S.D. Miss. Aug. 31, 2007) (citing *Gilbert v. David*, 235 U.S. 561, 569 (1914)).

Mr. Kline has presented conflicting and incomplete accounts regarding his state of domicile. At first, he represented to the Court that he was a non-resident of Mississippi,

claiming instead to be a resident of Utah. Docket No. 10 at 12 ("Defendant owns real property located in MS; however, that ownership is purely incidental and does not reflect residence, domicile, or continuous operations. Defendant does not maintain it as a principal place of living."); *id.* at 19 ("MS has no legitimate interest in adjudicating a dispute involving a UT resident[.]"). He never identified an address at which he resides in Utah. In fact, he redacted all address information from the documents he offered to support his claim of Utah residency. *See* Docket Nos. 10-3 (driver's license and firearm permit), 10-4 (vehicle registration), and 10-5 (voter registration). He later took the position that he in fact does reside in Mississippi, but he intends to return to Utah. Docket No. 18 at 11 (arguing that he is not domiciled in Mississippi because he merely "temporarily reside[s] [in Mississippi] for a government contract"). The Court does not find his position credible.

Plaintiffs presented the Court with ample evidence suggesting that Mr. Kline was in fact domiciled in Mississippi at the time the Complaint was filed. They submitted a marriage certificate issued to Jesse Theodore Kline and Kristen Nicole Petrus by Rankin County, Mississippi on March 15, 2025. Docket No. 13-3. Plaintiffs also provided a warranty deed, wherein Mr. Kline transfers real property located at 643 April Sound, Pearl, Mississippi 39208 to his wife (now Kristen Nicole Kline) and someone named "Theodore Joseph Kline." Docket No. 13-4. This appears to be an alias used by Mr. Kline. He denies this is his alias, but he also declines to identify who "Theodore Joseph Kline" is. Defendant does not dispute that Kristen Nicole Kline is his wife, and the warranty deed transfers the property to Kristen Nicole Kline and "Theodore Joseph Kline," as "tenants by the entirety[.]" *Id.* That strongly suggests that "Theodore Joseph Kline" is an alias for Defendant Jesse Kline, because "Theodore Joseph Kline" must be married to Kristen Nicole Kline to take the property as tenants by the entirety.

*See, e.g.*, *Ayers v. Petro*, 417 So. 2d 912, 914 (Miss. 1982) ("An estate by entirety may exist only in a husband and wife[.]"). Plaintiffs also provided an annual report for Behind Enemy Lines LLC, dated August 6, 2025, listing Mr. Kline as the manager and listing 643 April Sound, Pearl, Mississippi 39208 as the company's principal place of business. Docket No. 13-5. They also supplied a nursing license issued by the Mississippi Board of Nursing to Ms. Kline in January 2025 and a Limited Liability Company Certificate of Formation, listing Ms. Kline as manager and registered agent with her address as 643 April Sound, Pearl, Mississippi 39208. Docket Nos. 13-6 and 13-7. That certificate was issued May 28, 2025, approximately one month before the Complaint was filed in this case. Docket No. 13-7.

Considering this evidence and the paltering nature of Mr. Kline's submissions, the Court discounts Mr. Kline's statements regarding his intent to remain in Mississippi. "While relevant to the determination of domicile, a statement of intent is 'entitled to little weight if it conflicts with objective facts.'" *Ochoa*, 2007 WL 496612, at *2 (quoting *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 556 (5th Cir. 1985)). It appears to the Court that, rather than expressing genuine intent with respect to his domicile, Mr. Kline simply seeks to avoid answering this Complaint in any forum. The documentary evidence he provided to support his claim of Utah residency is outdated and/or misleading. For example, he apparently registered to vote in Utah on November 4, 2022, then registered to vote in Mississippi on July 25, 2024. Docket No. 19-2. Mr. Kline omits his Mississippi voter registration from his filings.[1] He also transferred the real property in Pearl Mississippi the day after the Complaint was

[1] When filling out the application necessary to register to vote in Mississippi, applicants declare under penalty of perjury that "the address listed above is my legal place of residence." THE OFFICE OF MISS. SEC. OF STATE, MISSISSIPPI MAIL-IN VOTER REGISTRATION APPLICATION, https://www.sos.ms.gov/sites/default/files/news/voter_registration_application.

filed in this case. This suggests Mr. Kline seeks to avoid answering the merits of Plaintiffs' claims, rather than pointing to another more appropriate forum where personal jurisdiction can be exercised over him.[2]

The evidence suggests that Mr. Kline was domiciled in Mississippi on the date the Complaint was filed and remains domiciled here. As such, Mr. Kline is subject to general jurisdiction in this forum. Plaintiffs have made the *prima facie* showing necessary to support this Court's exercise of jurisdiction over Mr. Kline. The portion of his motion, Docket No. 9, seeking dismissal based on the lack of personal jurisdiction is denied.

**2. Process & Service of Process**

Mr. Kline also seeks dismissal for insufficient process and insufficient service of process. The Court begins with the former.

While Mr. Kline purports to move, in part, under Rule 12(b)(4), his challenge to process is incomplete. "An objection under Rule 12(b)(4) concerns the form of the process and is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons." *Johnson v. City of Gulfport*, No. 1:24-CV-106-HSO-BWR, 2025 WL 818282, at *2 (S.D. Miss. Mar. 14, 2025) (quotation marks and citation omitted). Mr. Kline does not identify the content of the summons he challenges as insufficient. The portion of his motion, Docket No. 9, based on Rule 12(b)(4) is denied.

[2] Plaintiffs also represented to the Court that they asked Mr. Kline "whether he would agree to waive service and personal jurisdiction defenses if Plaintiffs agreed to dismiss this action and refile it in a Utah federal court. [] Kline responded that he is 'only interested in ending this case in finality.'" Docket 19-1 at 7. He will have a chance to do so in this forum.

Mr. Kline's challenge to service of process is more concerning. It appears that the process server retained by Plaintiffs, Mr. Ben Roberts, and Mr. Kline both engaged in questionable conduct. The parties have provided conflicting accounts of attempts to serve Mr. Kline. These are the facts as the Court currently understands them.

Prior to attempting service, Mr. Roberts obtained what he termed "active information indicating that Mr. Kline's residence is located at 643 April Sound, Pearl, Mississippi." Docket No. 13-1 at 1. Specifically, he indicated that he relied on land records indicating that Mr. Kline along with his wife, Kristen Kline (formally Kristen Petrus), own the home at that address. He also discovered a 2016 Chevrolet Silverado truck, in the driveway at that address, titled to Kristen Petrus. Additionally, Mr. Roberts and/or his associates spoke with neighbors near that address who indicated that until recently, Mr. Kline and his wife would regularly walk their dogs in the neighborhood.

On or about June 30, 2025, at approximately 12:30 p.m. Mr. Roberts attempted service at 643 April Sound, Pearl, Mississippi 39208. An adult male, that the Court believes was Mr. Kline, spoke to Mr. Roberts via an intercom system that allowed Mr. Kline to see and hear Mr. Roberts. It is unclear whether Mr. Roberts identified himself or the purpose of his visit.[3] The voice on the intercom stated that Mr. Kline did not live at that residence and the speaker

---

[3] Mr. Kline states that Mr. Roberts failed to do either, but the Court does not find Mr. Kline particularly credible, given Mr. Kline's repeated failures to be forthright with the Court. In addition to presenting outdated documents to the Court as if they were current and correct, Mr. Kline has also failed to ever identify where he claims to reside in Utah; he has changed his story about residing in Mississippi; he stated that Theodore Joseph Kline is an "ascertainable person[], and not an alias," Docket No. 18 at 4, but did not identify him; he refused to admit that it was his voice over the intercom system speaking to Mr. Roberts, despite speaking of those encounters as if he had first-hand information, offering no alternative explanation; and he has submitted incomplete/misleading information in a sworn declaration. *See* Docket No. 18-1 at 1 (stating that "[a]ll Utah documents submitted with my motion, including my . . . voter registration . . . are valid and issued to me and accurately reflect my domicile" but omitting that his most recent voter registration shows him registered to vote in Mississippi).

stated they did not know Mr. Kline. Mr. Roberts left the property without accomplishing service.

On July 3, 2025, at approximately 6:30 p.m. Mr. Roberts returned to the same address. Again, an adult male that the Court believes was Mr. Kline came over the intercom/camera system. Mr. Roberts asked for Jesse Kline. The voice on the intercom stated that he does not live here, then disconnected. There was a note taped to the front door that read "Jesse Kline Does Not Live Here Moved Out of State, New Owners." Docket No. 13-2. Mr. Roberts again left the property without accomplishing service.

On July 6, 2025, at approximately 11:20 p.m., an adult male—Mr. Kline asserts this was Mr. Roberts—returned to the same property and, under cover of darkness, appears to have affixed a GPS tracking device to the rear wheel well of a vehicle owned by Mr. Kline and/or Mr. Kline's wife that was parked in the driveway. Mr. Kline alerted the police, and members of the Pearl Police Department later recovered the tracking device. Mr. Kline has provided the Court with photographs from a home security system that appear to show someone placing the device then the later recovery of the device by police. Docket Nos. 10-7 and 10-8. Based on Mr. Kline's representations, this incident remains under investigation. This is also the subject of a parallel civil suit brought by Mr. Kline in this district. *Kline v. Prevail Investigations, LLC*, No. 3:26-CV-455-CWR-ASH (S.D. Miss. June 24, 2026).[4]

Mr. Roberts surveilled the same property on July 20, 2025, at approximately 10:30 a.m. and again on August 10, 2025, at approximately 5:40 p.m. but saw no movement outside the home. Mr. Roberts knocked on the door on each date but received no answer. He noted that

[4] This parallel action is brought by Kristen Kline and someone styled Theodore Kline, further suggesting that "Theodore Joseph Kline" is Mr. Kline's alias, despite Mr. Kline's claims to the contrary.

the same sign remained posted on the door. On both occasions, he left the property without accomplishing service.

On September 21, 2025, Mr. Roberts again returned to the same property at approximately 11:20 a.m. He noted that the same truck that he had previously observed and knew belonged to Mr. Kline and/or his wife was parked in the driveway. Mr. Roberts rang the intercom and an adult male voice that the Court believes was Mr. Kline answered. Mr. Roberts stated he had "papers" for Mr. Kline.[5] The voice on the intercom stated that "he does not live here anymore." Mr. Roberts then placed the documents on the doormat outside the front door. The voice on the intercom then stated, "I'll be suing you soon."[6] That response, especially in the context of the evasive actions Mr. Kline undertook, indicates to the Court that Mr. Kline understood Mr. Roberts was attempting to serve process.

Service upon individuals within a judicial district of the United States may be accomplished by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Like Federal Rule 4(e), the Mississippi Rule provides for service in this case "by delivering a copy of the summons and of the complaint to him personally or to an

---

[5] It is unclear whether these "papers" were ever identified as a summons and complaint but, as discussed further, the Court determines that Mr. Kline was aware that service of process was being attempted.

[6] That "Theodore Kline" later initiated the parallel action against Mr. Roberts, No. 3:26-CV-455-CWR-ASH, further indicates that the voice on the intercom/camera system was Mr. Kline.

agent authorized by appointment or by law to receive service of process[.]"[7] Miss. R. Civ. P. 4(d)(1)(A). Given the facts of this case, the Court must determine whether Mr. Roberts, by leaving the papers outside Mr. Kline's Mississippi home, satisfied the requirements of Rule 4, given Mr. Kline's extraordinary, evasive actions.

"Where a defendant refuses to accept service of process, delivery may be accomplished without placing the documents in the hands of such defendant." *Hardin v. Collier*, No. 1:22-CV-463, 2024 WL 604707, at *2 (E.D. Tex. Jan. 24, 2024) (citing *Slaieh v. Zeineh*, 539 F. Supp. 2d 864, 868 (S.D. Miss. 2008)). *See also Bruce v. ACA Residential, L.L.C.*, No. 1:23-CV-1110, 2024 WL 3512134, at *1 n.25 (W.D. La. July 23, 2024) ("Ms. Hooter's refusal of service of process could not serve as the basis of her argument for insufficient service."). "[A] defendant's refusal to accept service is not rewarded when the process server announces the nature of the documents and leaves them in close proximity to the defiant defendant." *Norris v. Causey*, 869 F.3d 360, 370 (5th Cir. 2017) (citing 4A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE, § 1095 (3d ed.)).

The decision in *Slaieh* is particularly instructive. There, Judge Lee faced the following question: "what constitutes 'delivery' of a copy of the summons and complaint to the defendant personally in a situation where the defendant is aware that service is being attempted and seeks to avoid service by refusing to accept service[?]" 539 F. Supp. 2d at 868. Upon noting that Mississippi courts had "not addressed whether 'in hand' delivery is required in this circumstance," Judge Lee noted that "courts and commentators have consistently concluded under identical and/or comparable rules for service of process that

---

[7] The Mississippi Rules offer an alternative that Mr. Roberts did not or was unable to take advantage of. *See* Miss. R. Civ. P. 4(d)(1)(B).

where a defendant refuses to accept service of process, 'delivery' may be accomplished without physically placing the documents in the hands of the defendant." *Id*. This Court agrees.

Mr. Kline was aware that service of process was being attempted upon him. His hypervigilance, misdirection and lies, and repeated evasive actions indicate as much. Placing the note on the door, Docket No. 13-2, further suggests that he understood whoever was visiting his home sought to deliver something in-hand to Jesse Kline. After Mr. Kline's repeated refusals to accept service, Mr. Roberts accomplished service by leaving the summons and complaint on the doormat in front of Mr. Kline's Mississippi home. Mr. Kline claims he was not in the home at the time but, as noted, the Court does not find Mr. Kline credible. Further, the vehicle in the driveway indicates the house was likely occupied. The Court will not entertain a game of cat and mouse and does not wish to encourage "wiles and tricks" simply to accomplish or avoid service. *See Wood v. Weenig*, 736 P.2d 1053, 1055 (Utah App. 1987) ("We strongly believe that personal service should not become a 'degrading game of wiles and tricks' nor should a defendant be able to defeat service simply by refusing to accept the papers or instructing others, suitable under the rules of civil procedure, also to reject service.") (citation omitted); *Slaieh*, 539 F. Supp. 2d at 870 (citing same). The Court finds service in this case was sufficient to satisfy "the objective of giving notice to the party to be served[.]" 4A Charles Alan Wright, Arthur R. Miller, & Adam N. Steinman, FEDERAL PRACTICE & PROCEDURE, § 1095 (4th ed.) (April 2026 update). The portion of Defendant's motion, Docket No. 9, based on insufficient service is also denied.

**3. Motions to Amend**

Finally, the Court considers Plaintiffs' motions to amend.

After the window for a party to amend as of right passes, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Because no scheduling order has been entered in this case, the "good cause" standard in Rule 16(b) gives way to "the more liberal standard of Rule 15(a)" in guiding the Court's determination to grant or deny leave. *S&W Enterprises, L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003). "Leave to amend is in no way automatic, but the district court must possess a substantial reason to deny a party's request for leave to amend." *Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275, 288 (5th Cir. 2023) (quotation omitted). "Factors for the court to consider include 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment.'" *Williams v. Integon Nat. Ins. Co.*, 132 F.4th 801, 805 (5th Cir. 2025) (quoting *Weyerhaeuser*, 74 F.4th at 288) (cleaned up).

The Court finds no undue delay, bad faith or dilatory motive on Plaintiffs' part. The Court further notes that no prior amendments have been allowed. Allowing the amendment at this stage will not prejudice Mr. Kline. In fact, Plaintiffs' proposed amendment enables Mr. Kline to mount a single, consolidated defense to all of Plaintiffs' infringement allegations. Finally, the proposed amendment would not be futile, because it pleads a plausible claim of ongoing patent infringement with respect to the additional patents Plaintiffs seek to add to this action.

Plaintiffs' motion for leave to file their third amended complaint, Docket No. 34, is granted. Plaintiffs' motions for leave to file their first and second amended complaints, Docket Nos. 24 and 32, are denied as moot.

**SO ORDERED**, this the 20th day of July 2026.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE